A02A0094. PRINTIS v. BANKERS LIFE INSURANCE COMPANY, INC.

(568 SE2d 85)

RUFFIN, Judge.

Felicia Printis sued Bankers Life Insurance Company, Inc. (Bankers Life), claiming that she was charged illegal, excessive premiums for a credit life insurance policy that she purchased. Printis sought repayment of overpaid premiums, damages for an alleged Racketeer Influenced and Corrupt Organizations Act violation, as well as class action status.[1] Bankers Life moved for judgment on the pleadings, which the trial court granted. This appeal ensued. As the trial court ruled correctly, we affirm.

On a motion for judgment on the pleadings, we treat all well-pled material allegations by the nonmovant as true and all denials by the movant as false.[2] Although such motion is, by definition, limited to the pleadings, a trial court may also consider exhibits that have been incorporated into the pleadings.[3] If, in reviewing these documents, there is a complete failure by the plaintiff to state a cause of action, then the defendant is entitled to judgment as a matter of law.[4]

Viewed in this light, the record demonstrates that Printis purchased a new car for $20,711.45 that she financed with a simple interest loan. The finance charge over the life of the loan was

---

[1] According to the caption of Printis' complaint, she seeks "equitable relief." The body of the complaint, however, does not contain a claim for equitable relief. Rather, Printis alleges she has a legal claim; thus, equity is not invoked. See *Southern Healthcare Systems v. Health Care Capital Consolidated*, 273 Ga. 834, 836 (6) (545 SE2d 882) (2001) ("A party cannot resort to equity if an adequate legal remedy is available.").

[2] See OCGA § 9-11-12 (c); *South v. Bank of America*, 250 Ga. App. 747, 749 (551 SE2d 55) (2001).

[3] See *Lewis v. Turner Broadcasting System*, 232 Ga. App. 831, 832 (2) (503 SE2d 81) (1998).

[4] See *South*, supra.

$2,117.95, which brought Printis' total payments to $22,829.40. In connection with the car loan, Printis purchased credit life insurance through Bankers Life. The insurance premium was based upon the total payments of $22,829.40 rather than $20,711.45, the amount financed. According to Printis, Georgia law prohibits insurers from computing insurance premiums in this manner.

Printis cites OCGA § 33-31-4 (a), which provides that "[t]he amount of credit life insurance shall not exceed the indebtedness. Where indebtedness repayable in substantially equal installments is secured by an individual policy of credit life insurance, the amount of insurance shall not exceed the approximate unpaid indebtedness on the date of death." According to Printis, with an initial debt of $20,711.45, the most she will ever owe is $20,711.45.[5] Thus, she reasons, Bankers Life should have calculated her credit life insurance premiums on this basis. We disagree.

The cardinal rule in construing statutes is to ascertain the intent of the legislature.[6] In so doing, we look first to the language of the statute.[7] As our Supreme Court has noted,

> where . . . a statute is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it, but must construe it according to its terms. In other words the language being plain, and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent.[8]

As Printis recognizes, OCGA § 33-31-4 (a) limits the amount of credit life insurance to the amount of "indebtedness." OCGA § 33-31-1 (5) defines "indebtedness" as "the total amount payable by a debtor to a creditor in connection with a loan or other credit transaction." The phrase *total amount payable* indicates just that — the total amount a consumer will pay over the course of the loan.[9] Had the legislature intended otherwise, it could easily have defined indebtedness differently — as the amount financed or as principal, for example. Although this is a matter of first impression in Georgia, we are

---

[5] Specifically, Printis refers to the Motor Vehicle Sales Finance Act, OCGA § 10-1-30 et seq., which limits vehicle retailers' ability to collect unearned interest.

[6] See *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981).

[7] See id.

[8] (Citation and punctuation omitted.) Id.

[9] See, e.g., *Vulcan Life &c. Ins. Co. v. United Banking Co.*, 118 Ga. App. 36 (2) (162 SE2d 798) (1968) (physical precedent only) ("indebtedness" may include costs in addition to amount financed).

not the first court to interpret "total amount payable" in this manner.[10]

Moreover, this interpretation is consistent with a rule promulgated by the Insurance Commissioner, which provides that "[t]he term 'initial insured indebtedness' shall mean the total payments as that term is defined under the Federal Consumer Credit Protection Act. This Act defines 'total of payments' as the amount you will have paid when you have made all scheduled payments."[11] "The interpretation of a statute by an administrative agency which has the duty of enforcing or administering it is to be given great weight and deference."[12] Thus, where the administrative agency has interpreted a statute in a manner consistent with the legislative intent, we will defer to that interpretation.[13]

Here, Printis' complaint is predicated upon her contention that Bankers Life illegally calculated the premium for her credit life insurance policy by including the finance charge with the principal in ascertaining the total amount payable. For the reasons discussed, this contention lacks merit. It follows that the trial court did not err in granting judgment on the pleadings in favor of Bankers Life.

*Judgment affirmed. Pope, P. J., and Barnes, J., concur.*

DECIDED JUNE 18, 2002 —
RECONSIDERATION DENIED JULY 2, 2002 — ■■■■■

*Sidney L. Moore, Jr.,* for appellant.
*Sutherland, Asbill & Brennan, Thomas M. Byrne, Thomas W. Curvin,* for appellee.

---

[10] See *Liberty Bank & Trust Co. &c. v. Splane,* 959 P2d 600, 603 (Okla. App. 1998); *Winkle v. Grand Nat. Bank,* 267 Ark. 123 (601 SW2d 559, 571) (1980). Compare *McCullar v. Universal &c. Ins. Co.,* 687 S2d 156 (Ala. 1996).

[11] See Ga. Comp. R. & Regs. r. 120-2-27-.03 (b) (5).

[12] (Punctuation omitted.) *Ins. Dept. of the State of Ga. v. St. Paul Fire &c. Ins. Co.,* 253 Ga. App. 551, 552 (559 SE2d 754) (2002).

[13] See id.